(110 App. Div. 742.)

## KOSTER v. COYNE, Mayor, et al.

(Supreme Court, Appellate Division, Second Department. January 26, 1906.)

1. STATUTES—CONSTITUTIONAL LAW—SPECIAL CITY LAW.

Laws 1905, p. 1160, c. 501, which became a law before the census of 1905 was taken, is not a special law, within Const. art. 12, § 2, as to the manner of passage of special city laws, by reason of its provision that, with certain exceptions, its provisions shall not apply to a city that becomes a city of the second class under the enumeration to be had in 1905 till 1908; it relating to no special city, but to all cities of the third class.

2. APPEAL—PARTIES AGGRIEVED.

From an order restraining the common council of a city from proceeding with an election to fill the vacancy caused by the resignation of an alderman, on the ground that the offices of the aldermen elected at the time he was elected had ceased to exist, such aldermen may appeal, not only because the action necessarily determine their official status, but because they are aggrieved parties, within Code Civ. Proc. § 1294, on account of the order interfering with them in the discharge of their duties.

Appeal from Special Term, Westchester County.

Suit by Henry Koster, a taxpayer of the city of Yonkers, against John H. Coyne, mayor, and others. From an order restraining defendants from proceeding with an election to fill a vacancy caused by resignation of an alderman, defendants appeal. Reversed.

Argued before JENKS, HOOKER, RICH, and MILLER, JJ.

Francis A. Winslow, for appellants John H. Coyne and others.

James M. Hunt, for appellants John H. Southwick and other aldermen of the city of Yonkers.

John F. Brennan, for respondent.

Charles Philip Easton, for the board of education.

RICH, J. We are required, in determining the question presented by this appeal, to pass upon the constitutionality of section 2, c. 501, p. 1160, Laws 1905, as well as the charter of the city of Yonkers (chapter 635, p. 1327, Laws 1895). The city of Yonkers is a municipal corporation, acting under chapter 635 of the Laws of 1895. At the time of the passage of that act, the city of Yonkers had a population of less than 50,000 inhabitants. In the year 1904 John H. Coyne was elected an alderman of the city for a term expiring on December 31, 1906, and resigned that office on November 13, 1905. The charter (chapter 635, p. 1327, Laws 1895) provides that the common council shall consist of 14 members, a majority of whom shall constitute a quorum for the transaction of business, and that no tax shall be levied or assessment except by a vote of a majority of all the members in office. In the year 1905 it was determined by the census, taken pursuant to law, that the city of Yonkers had a population of 61,707, and a certificate of that fact was made by the Secretary of State and filed in the office of the clerk of the city of Yonkers on October 5, 1905. The city of Yonkers thereupon became a city of the second class. Chapter 182, p. 371, Laws 1898. Coyne and six others were elected aldermen in November, 1894, under a provision of the charter prescribing, among other things, that two aldermen should be elected in each of the seven wards of the city for the term of two years, one to be

97 N.Y.S.—28

elected each year; it being provided that seven aldermen should be elected in the city each year. The term of office of Coyne and the six others elected at the same time expires on December 31, 1896. This appeal is taken from an order restraining the common council from proceeding with an election to fill the vacancy caused by the resignation of Coyne for the term expiring December 1, 1906, which was granted upon the theory that such an election "is in violation of the law of the state, and is a waste of the public moneys." Section 4 of title 2 of the charter of the city of Yonkers (chapter 635, p. 1331, Laws 1895) provides as follows:

"(2) When a vacancy shall occur in an elective city office, except of justice of the peace, more than three months before an annual city election. * * * (4) Special elections shall be ordered by the common council within fifteen days after the failure to elect or the vacancy shall occur, and shall be held within fifteen days after such order. Notice thereof shall be published at least five days previous thereto. At the time of ordering any special election, the common council shall appoint a day for registration of voters, and publish notice thereof with notice of such special election."

It is claimed by counsel for the respondent that this provision of the charter is in violation of section 3 of article 12 of the Constitution of the state of New York, and that chapter 501, p. 1160, of the Laws of 1905, is also unconstitutional. Chapter 501, p. 1160, of the Laws of 1905, provides:

"Section 1. Section two of chapter one hundred and eighty-two of the laws of eighteen hundred and ninety-eight is hereby amended so as to read as follows: '§ 2. Within thirty days after every state enumeration, the Secretary of State shall file with the clerk of every city a certificate showing the population of such city; and if it appears therefrom that such city has since the prior state enumeration become a city of the second class, then all the provisions of this act shall apply to such city on and after the first day of January thereafter, but the provisions of this act shall not apply to any city that becomes a city of the second class under the enumeration to be had in the year nineteen hundred and five, until on and after the first day of January nineteen hundred and eight, except that the officers provided in such act for such city as becomes a city of the second class after such enumeration, shall be elected at the city election to be held on the Tuesday succeeding the first Monday in November nineteen hundred and seven.'"

If this act is constitutional, then the operation of the White charter to the city of Yonkers is postponed. The Constitution (section 2, art. 12) provides, among other things:

"Laws relating to the property, affairs or government of cities, and the several departments thereof, are divided into general and special city laws; general city laws are those which relate to all the cities of one or more classes; special city laws are those which relate to a single city, or to less than all the cities of a class. Special city laws shall not be passed except in conformity with the provisions of this section. After any bill for a special city law, relating to a city, has been passed by both branches of the Legislature, the house in which it originated shall immediately transmit a certified copy thereof to the mayor of such city, and within fifteen days thereafter the mayor shall return such bill to the house from which it was sent, or if the session of the Legislature at which such bill was passed has terminated, to the Governor, with the mayor's certificate thereon, stating whether the city has or has not accepted the same."

If chapter 501, p. 1160, of the Laws of 1905, was a special city law, then it was unconstitutional and void. Concededly the act was never submitted to any municipal authority of any city.

The first question presented for our determination is whether chapter 501, p. 1160, of the Laws of 1905 is effective as a legislative act, or whether it is unconstitutional and void. It postponed within the city of Yonkers until January 1, 1908, the operation of the White charter, with the exception of the election of municipal officers in November, 1907, and, if valid, its charter remains effective and in operation. If it be void, the provisions of the White charter are applicable, the municipal officers of the city are governed by it, and its provisions permit only one alderman for each ward; and, as there is now actually in office an alderman representing the second ward, elected in November, 1905, there is no vacancy in the office to fill by special election, and the order appealed from would necessarily have to be affirmed.

We cannot concur in the construction of the respondent that this statute is a special law. We think it was a general law. At the time of its enactment it did not relate to a single city; it related to all cities of the third class. It became a law before the census of 1905 was taken. It was not known which, or how many, cities of that class would have a population of 50,000. If it was necessary to submit it to the municipal authorities of any city of the third class at the time it became a law, it was necessary to submit it to the authorities of every city of that class; for neither the Legislature nor the municipal authorities could determine to a certainty, in advance of the census, which cities would, as the result thereof, become cities of the second class, and the legislation must have been intended to relate to all cities not having a population of 50,000 as a class. Judge Earl has framed a definition of a general law in Matter of N. Y. Elevated R. R. Co., 70 N. Y. 327, 350, where he says:

"A law applicable to all the people of the state, and operating in all parts of the state, would be most general. But a law may be general without affecting all the people of the state. A law regulating the rights of married women, or of minors, or of adults, or of aliens, would be general, and it would be general although confined to the persons in being at the time of its passage. So a law conferring new rights upon all existing insurance companies, or railroad companies, or manufacturing companies, would be general. A law which relates to persons or things as a class is general, but one which relates to particular persons or things of a class is special and private."

The law did not undertake to single out any city of a class, but related to all as a class. The operation of the White charter of the city of Yonkers is suspended, as provided by the statute. Chapter 501, p. 1160, Laws 1905.

In regard to respondent's argument that the defendant Coyne's term of office as alderman was abridged by section 3, art. 12, of the Constitution, and expired in December, 1905, we think this contention is also without merit. The section of the Constitution upon which it is based is properly divisible into two parts. The one part containing the clause abridging the terms of officers is limited to those elected before the 1st day of January, 1895. In addition to this, cities of the third class, of which the city of Yonkers at the time of Coyne's elec-

tion was one, were, by the closing sentence of the section, excluded from its provisions.

There is no force in the argument that the appellants, elected in 1904, have no standing in court upon this appeal because of the fact that the title to their office or the other aldermen is not directly challenged in this action. The decision of this appeal and of the action necessarily determines their official status, in addition to which they are "aggrieved parties," within the provisions of section 1294 of the Code of Civil Procedure, because the order from which this appeal is taken interferes with them in the discharge of their duties. - It follows, therefore, that the order must be reversed, and the motion for a temporary injunction denied, with costs to the appellants.

Order reversed, with $10 costs and disbursements, and motion denied, with costs. All concur.